IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE STATE OF ALABAMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:08-cv-881-MEF-TFM |
| | ) | |
| CENTERS FOR MEDICARE &, | ) | (WO - DO NOT PUBLISH) |
| MEDICAID SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

The State of Alabama ("Plaintiff" or "Alabama") brought this case against the Centers for Medicare & Medicaid Services ("CMS"), the Department of Health and Human Services ("HHS"), and representatives of CMS and HHS in their official capacity, including Herb B. Kuhn ("Kuhn"), Kerry N. Weems, and Michael O. Leavitt (collectively, "Defendants") (Doc. #18). Alabama seeks declaratory and injunctive relief for the federal issuance—in the form of a "Dear State Health Official" letter ("SHO Letter")—of what it claims to be an illegal administrative regulation. Defendants' Motion to Dismiss the amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (Doc. #19) is now under submission and ready for a ruling. For the reasons set forth in this Memorandum Opinion and Order, the motion is due to be GRANTED in part and DENIED in part.

## II. JURISDICTION AND VENUE

Plaintiff asserts that this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.  Defendants have not argued that the Court lacks personal jurisdiction over them, and there is no dispute that venue is proper pursuant to 28 U.S.C. § 1391(e).

## III. LEGAL STANDARD

A claimant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack. *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).  For facial attacks, the court  merely checks to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.  *Id.*  By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction in fact, using material outside the pleadings. *Id.*

If the challenge is facial, the plaintiff has safeguards similar to those retained in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Id.*  Accordingly, "the court must consider the allegations in the plaintiff's complaint as true." *Id.* (omitting internal citations and quotations).  Thus, with facial attacks the court takes the allegations in the plaintiff's complaint as true and merely looks to see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.  *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).  As stated below, the Motion to Dismiss presents a facial attack, so the following facts are taken as true from the amended complaint:

## IV. FACTUAL AND PROCEDURAL BACKGROUND

**A. Facts**

CMS is the federal agency which administers Medicaid at the national level.  On October 28, 2008, CMS issued the SHO Letter in question, signed by Kuhn in his capacity as Deputy Administrator of CMS and Acting Director of CMS's Center for Medicaid and State Operations.  CMS notes on its website that it issues these letters "to provide States with guidance and clarification on current information pertaining to Medicaid policy and Medicaid data issues[,] . . . not to establish policy, but to ensure consistency and better serve the States."  Kuhn wrote in the SHO Letter that its purpose was to "explain[]" CMS's "policy regarding the refunding of the Federal share of Medicaid overpayments, damages, fines, penalties, and any other component of a legal judgment or settlement" when a state recovers pursuant to legal action under its state False Claims Act ("FCA") or other state statutory or common law cause of action.

Plaintiffs', however, allege that the SHO Letter creates policy and imposes binding legal requirements on states.  They further allege that it is a substantive rule constituting final agency action.  The SHO Letter says that "[a]ny State action taken as a result of harm to a State's Medicaid program must seek to recover damages sustained by the Medicaid program as a whole, including both Federal and State shares."  States "may not seek to recover merely the 'State share' of computed fraud damages unless appropriate Federal and State authorities formally agree to sever the Federal and State portion of the overpayment and pursue them

as separate actions." The SHO Letter also says states must pay the federal government the applicable Federal Medical Assistance Percentage rate ("FMAP")[1] of all amounts recovered in these actions—including double and treble damages—not just amounts equivalent to the actual damages suffered by the Medicaid program. Furthermore, the letter says that states must pay the federal government that percentage share before deducting the costs of the litigation utilized to recover those wrongly-paid funds.

The SHO Letter also imposes timeliness requirements for paying the federal government its percentage share. It says that states must "report the refund of the Federal share on the next quarterly expenditure report" following the time a settlement occurs or a judgment is rendered. Therefore, Alabama must "report the FMAP-proportionate share of the entire judgment to CMS for reduction of the State's next quarterly grant award," regardless of whether Alabama has actually collected any amounts on that settlement or judgment.

Plaintiff alleges that the requirements in the SHO Letter harm Alabama because they limit its ability to negotiate settlements in cases involving Medicaid fraud and abuse. Plaintiff further alleges that the requirements may bankrupt Alabama's Medicaid program.

**B. Procedural History**

Alabama filed its amended complaint on December 31, 2008 (Doc. #18), alleging six

---

[1] State Medicaid programs are financed jointly using state and federal funds. FMAP represents the percentage of expenses paid for by the federal government, which can vary by state. For fiscal year 2009, FMAP for Alabama was 67.98 percent.

causes of action stemming from the SHO Letter.  In Count I, Alabama states that the requirements in the SHO Letter exceed CMS's statutory authority.  In Count II, Alabama claims that the SHO Letter is an invalid substantive rule because it was not subjected to notice-and-comment rulemaking.  In Count III, Alabama states that the SHO Letter is an invalid substantive rule because it was not subjected to initial or final regulatory flexibility analysis.  Plaintiff asserts in Count IV that the contents of the SHO Letter unconstitutionally commandeer the state sovereignty of Alabama.  In Count V, Plaintiff claims that the requirements in the SHO Letter impose a federal tax on Alabama in violation of the intergovernmental-tax-immunity doctrine.  Finally, in Count VI, Alabama states the requirements in the SHO Letter are arbitrary and capricious.  Alabama prayed that this Court hold the SHO Letter unlawful and enjoin Defendants from implementing its requirements. Defendants filed their motion to dismiss on January 5, 2009 (Doc. #19).  After allowing the parties extensions to adequately brief the matter, that motion came under submission on June 12, 2009.

## V. DISCUSSION

### A. Type of Motion to Dismiss

As an initial matter, the parties disagree over the type of attack Defendants present with their motion to dismiss.  Plaintiff asserts that Defendants present a factual attack, arguing that the motion does not rely solely on the face of the amended complaint.  Plaintiff specifically notes Defendants' statement in its motion that "[b]ecause CMS has not yet issued

a disallowance with respect to Alabama's recovery from pharmaceutical manufacturers, it remains to be seen what ramifications the SHO Letter will have in practice." Defendants do not agree that their motion is a factual attack, stating instead that it presents a facial attack on Plaintiff's pleading. Defendants state they did not rely on extrinsic evidence for the referenced quote, arguing that its contents can be inferred from the absence of such a claim in Plaintiff's amended complaint. Defendants further argue that their motion only relies on two attachments, neither of which give rise to a factual challenge. Exhibit A is the same SHO Letter that was attached to Plaintiff's amended complaint. Defendants assert that they use Exhibit B, a decision of the Departmental Appeals Board of the HHS, merely as legal authority and not extrinsic evidence. Therefore, Defendants state that they do not rely on any evidence extrinsic to Plaintiff's amended complaint.

Defendants' assertion that "it remains to be seen what ramifications the SHO Letter will have in practice" does not create a factual challenge because Defendant does not rely on any extrinsic evidence for that statement. Under a facial challenge, that statement will only have weight if supported by Plaintiff's pleadings, since the court must take all allegations in the plaintiff's complaint as true under a facial challenge. *McElmurray*, 501 F.3d at 1251. Defendants' attachments also do not give rise to a factual challenge. Defendants' Exhibit A is the same SHO Letter attached as an exhibit to Plaintiff's amended complaint. A pleading includes its attached exhibits, and reliance on those exhibits does not convert a facial challenge into a factual challenge. *See id.*, 501 F.3d at 1251 (noting that the trial court

treated the motion as a facial attack by considering only the complaint and its attached exhibits). Defendants use their attached Exhibit B as extrinsic evidence. However, Defendants also assert that they are only facially challenging Plaintiff's amended complaint, not making a factual challenge to this court's jurisdiction. Therefore, no weight will be given to Exhibit B. Because Defendants present a facial challenge to Plaintiff's amended complaint, Alabama's allegations from its amended complaint are taken as true.

## B. Final Agency Actions

Defendants first argue that this Court lacks jurisdiction because there is no final agency action. Plaintiff counters that Defendants do not dispute that the SHO Letter constitutes agency action and presents arguments that it qualifies as final agency action.

This Court may review only final agency actions. 5 U.S.C. § 704; *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1280 (11th Cir. 2007) (citing *Ga. Power Co. v. Teleport Commc'ns Atlanta, Inc.*, 346 F.3d 1047, 1150 (11th Cir. 2003)). The requirement of a final agency action is jurisdictional, and the Court cannot reach the merits of the dispute if an agency action is not final. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003). To be "final," an agency's action must: (1) mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature; and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow. *U.S. Steel*, 495 F.3d at 1280 (quoting *Bennett v. Spear*, 520

U.S. 154, 177–78 (1997)) (inner quotations omitted).[2] *See also Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("To determine when an agency action is final, . . . [t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.").

Within all six counts in its amended complaint, Alabama alleges that the SHO Letter constitutes final agency action.  Because Defendants make only a facial attack to subject matter jurisdiction, the Court must take this allegation as true.  Therefore, for the purposes of this motion to dismiss, this Court does not lack subject matter jurisdiction due to an absence of final agency action.

## C. Ripeness

Defendants claim that this dispute is not ripe for judicial review because CMS has yet

---

[2] In their brief, Defendants analogize the current case to *Flowers Industries v. Federal Trade Commission*.  849 F.2d 551 (11th Cir. 1988).  Plaintiff analogizes to *Student Loan Marketing Association v. Riley*.  104 F.3d 397 (D.C. Cir. 1997).  However, both of these cases were decided before *Bennett* and neither case uses the standard set out by the United States Supreme Court in *Bennett* for determining when agency action is "final."  *See, e.g.*, *Tennessee Valley Auth. v. Whitman*, 336 F.3d 1236, 1248 (11th Cir. 2003) (noting that the "*Bennett* factors" are used to determine whether agency action is final).

Furthermore, the "criteria" employed by the District of Columbia Circuit in *Riley* to determine when agency action is final do not square with the *Bennett* factors.  The *Riley* Court gave three criteria, which all seem aimed at determining whether the agency's action came at the consummation of its decision making process.  *Compare Riley*, 104 F.3d at 405 *with Bennett*, 520 U.S. at 177–78.  However, the *Bennett* factors include a second requirement that the *Riley* criteria do not seem to address.  *Bennett*, 520 U.S. at 178.  Therefore, this Court will not look to *Riley* for the purposes of determining the existence of final agency action.

Similarly, the Eleventh Circuit in *Flowers Industries* made its decision based on more prudential considerations of ripeness, not on whether there had been final agency action.  *See* 849 F.2d at 553.  Therefore, this Court will also not look to *Flowers Industries* for the purpose of determining the existence of final agency action.

to seek a federal share of Alabama's recovery for damages to Medicaid in accordance with the procedures outlined in the SHO Letter.  As a result, Alabama has yet to suffer any harm sufficient for judicial review, and this Court could only consider this matter in the abstract. Defendants argue that any specific situation where Alabama has recovered damages to Medicaid may not play out as stated in the SHO Letter, and, therefore, this Court would need more factual context to properly consider the issue.  Furthermore, Defendants state that even if any such specific situation occurred, Alabama had administrative review processes to complete before filing a lawsuit.  Finally, Defendants argue that the contested nature of the SHO Letter—with regards to whether it contains a substantive rule or an interpretive rule or policy statement—makes Alabama's procedural claims also not ripe.

Alabama counters that additional factual context is unnecessary because its amended complaint presents purely legal questions.  It argues that the procedural injuries asserted in its amended complaint need not wait for CMS to enforce the SHO Letter against it.  Further, Alabama claims that it has suffered and will continue to suffer significant hardship from delayed judicial review because the requirements in the SHO Letter drastically change the incentives for pursuing and settling Medicaid fraud suits.  Alabama argues that it cannot know if it is worthwhile to dedicate considerable time and resources to such suits and settlements until it knows if the SHO Letter stands.  As a result, Alabama argues that its claims are ripe for review.

The ripeness doctrine exists to prevent courts from "entangling themselves in abstract

-9-

disagreements over administrative policies" as well as to "protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105–07 (1977). The declaratory and injunctive relief sought by Alabama is discretionary, and courts have traditionally hesitated to apply them to administrative determinations absent a controversy ripe for judicial resolution. *Id.* at 148. The Supreme Court has given two elements for determining whether a controversy is ripe: (1) the hardship to the parties resulting from withholding of court consideration, and (2) the fitness of the issues for judicial decision. *Id.* at 149.

In its amended complaint, Plaintiff alleges that the SHO Letter has harmed Alabama because it has limited the state's ability to negotiate settlements in current Medicaid fraud and abuse litigation. Taking this allegation as true in accordance with the standard of review for a facial challenge to subject matter jurisdiction, the Court finds that this harm "is sufficiently direct and immediate to render the issue appropriate for judicial review at this stage."[3] *Id.* at 152. Therefore, all counts alleged by Alabama that are also fit for judicial decision are ripe.

---

[3] Alabama also alleges the potential bankruptcy of its Medicaid program. Though the Court takes this allegation as true, it represents a speculative and future harm that might not alone render this dispute ripe for review.

-10-

### 1. Counts II and III

Alabama argues that Count II presents purely legal claims for which no further factual context is needed. Defendants claim that Count II is not ripe because it is unclear whether the SHO Letter is a substantive rule or merely an interpretive rule or general statement of policy. As shown below, the allegations in Count III are intertwined with the allegations in Count II, and they would become ripe at the same time.

Federal agencies must publish notice of a proposed substantive rule and allow the opportunity for submission of comments. 5 U.S.C. § 553. This notice-and-comment requirement does not apply to interpretive rules or general statements of policy. *Id.* § 553(b). If the SHO Letter is a substantive rule, Count II would be ripe. This is because a claim for failure to comply with the notice-and-comment requirement becomes ripe at the time the alleged failure occurs. *See Ouachita Watch League*, 463 F.3d 1163, 1174 (11th Cir. 2006) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737 (1998)).

When the notice-and-comment requirement applies, a federal agency must also "prepare and make available for public comment an initial regulatory flexibility analysis." *See* 5 U.S.C. § 603(a). Additionally, an agency promulgating a final rule after satisfying the notice-and-comment requirement "shall prepare a final regulatory flexibility analysis." *See* 5 U.S.C. § 604(a).

Alabama asserts that the SHO Letter is a substantive rule three different times in its amended complaint. Because the statutes demonstrate that the requirements of initial and

-11-

final regulatory flexibility analysis go hand-in-hand with the notice-and-comment requirement, Counts II and III would both become ripe when the alleged failure to comply with these requirements occurs.  Therefore, taking the allegation that the SHO Letter constitutes a substantive rule as true, Counts II and III are ripe.

### 2. Counts I, IV, V, and VI

Alabama argues that Count I also presents a purely legal claim for which no further context is needed.  However, the distinction between Count I and Counts II and III is that Count I charges CMS with issuing a letter whose content exceeds CMS's statutory authority. This distinction makes Count I more similar to Counts IV, V, and VI than Counts II and III. As in Count I, Counts IV, V, and VI make arguments regarding the content of the SHO Letter.[4]  Defendants argue that these claims are not fit for judicial review because a court is in a better position to evaluate the content of the SHO Letter once it has actually been applied to Alabama.  Defendants add that Alabama would have a set of administrative remedies to pursue upon that application before seeking judicial inquiry.  Defendants argue that, because that administrative process has not occurred, no administrative record exists and therefore judicial review is impossible at this stage.  Alabama counters that the requirements given in the SHO Letter are sufficiently clear to make their claims fit for judicial decision.

Considering these claims at this time would entangle the Court "in abstract

---

[4] The United States Supreme Court has previously found that a claim that an agency exceeded its statutory authority—even when interpreted as a pure legal issue—may be precluded from judicial review by ripeness considerations.  *See Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158 (1967).

disagreements over administrative policies." *Abbott Labs.*, 387 U.S. at 148.  It would also inappropriately interfere with the agencies before "an administrative decision has been formalized and its effects felt in a concrete way by" Alabama.  *Id.*  Plaintiff does not bring these counts to challenge a claim by CMS to funds Alabama has secured through Medicaid fraud litigation.  Plaintiff makes no assertions in its amended complaint that CMS has made any such claims.  These counts are based purely on an anticipation of how CMS would apply the content of the SHO Letter in that context.

Alabama correctly notes that CMS's consistent use of mandatory language in the SHO Letter makes its application less speculative.  The SHO Letter throughout notes what a state "must" and "may not" do, is "required" to do, and is "not permit[ted]" to do when a state pursues litigation for harm to its Medicaid program.  However, these counts in Alabama's amended complaint still rest upon uncertain application of the SHO Letter to "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (inner quotations omitted).

Furthermore, as noted by Defendants, were CMS to apply the content of the SHO Letter to Alabama, Alabama would have an extensive administrative review process available before resorting to the use of judicial resources.  The ripeness doctrine protects not just courts but also "other branches from judicial meddling."  *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005).   Therefore, an available but unused administrative process provides further reason to dismiss these counts on ripeness grounds.

*See id.* at 1339–40.  As noted by the Eleventh Circuit, "[w]hen a court is asked to review decisions of administrative agencies"—decisions that have yet to be made, for these four counts—"it is hornbook law that courts must exercise patience and permit the administrative agency the proper time and deference for those agencies to consider the case fully."[5]  *Id.* at 1339.  Therefore, Counts I, IV, V, and VI are due to be dismissed as not ripe.

**D. Sovereign Immunity**

Defendants argue that this Court lacks jurisdiction because the United States has not waived its sovereign immunity for Alabama's claims.  Defendants state that the APA's waiver of sovereign immunity only applies to final agency actions.  Alabama argues that Defendants provide an overly restrictive misinterpretation of the APA's waiver of sovereign immunity.  Alabama also makes arguments in the alternative, one of which is that the SHO Letter does constitute final agency action and Defendants have waived their sovereign immunity under even their reading of the APA's waiver provision.

The United States may not be sued without its consent, and that consent is a prerequisite for jurisdiction.  *Asociacion de Empleados del Area Canalera v. Panama Canal,*

---

[5] Alabama argues that it asserts constitutional claims which cannot be decided in the administrative process.  However, Defendants correctly respond that the mere presence of a constitutional claim cannot exclude an administrative review.  Otherwise, any plaintiff wishing to avoid administrative review could simply add a constitutional claim to their other assertions and proceed directly to court.

Furthermore, the administrative review might decide any Alabama's claims in a manner favorable to Alabama, without having to reach any constitutional question.  Even in a situation where Alabama remained unsatisfied, a court could then consider lingering questions unfit for administrative review.  *See Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 23 (2000).

453 F.3d 1309, 1315 (11th Cir. 2006) (quoting *United States v. Mitchell*, 453 U.S. 206, 212 (1983)).  This immunity extends to agencies of the United States.  *Id.*  Ambiguities in a purported waiver of sovereign immunity are construed in favor of immunity.  *Id.*

Section 702 serves as the APA's waiver provision.  *See, e.g.*, *State of Fla., Dep't of Bus. Regulation v. U.S. Dep't of the Interior*, 768 F.2d 1248, 1253 (11th Cir. 1985).  Defendants, however, argue that § 704 qualifies this waiver and makes it applicable only to final agency action.  Assuming, without deciding, that Defendants' argument is correct, sovereign immunity has still been waived for the purposes of a facial attack to jurisdiction.  As stated above, under a facial attack the Court must take the allegations in Alabama's amended complaint as true, and Alabama asserts several times in its amended complaint that the SHO Letter constitutes final agency action.

**E. Regulatory Flexibility Act Claim**

Count III accuses Defendants of violating two provisions of the Regulatory Flexibility Act ("RFA") by failing to issue both an initial and final regulatory flexibility analysis.  5 U.S.C. §§ 601–612.  Defendants argue that this Court lacks jurisdiction specifically for Count III because only small entities can sue under the RFA.  Alabama counters that judicial review under the RFA is not limited to small entities, and so ruling would render some of the RFA's provisions meaningless.

Section 611 dictates the extent of judicial review of alleged violations of the RFA.  *See id.* § 611(c) ("Compliance or noncompliance by an agency with the provisions of this

-15-

chapter shall be subject to judicial review only in accordance with this section."). That section says only a "small entity" is entitled to judicial review. *Id.* § 611(a)(1). The RFA defines a "small entity" as a "small business," "small organization," or "small governmental jurisdiction." *Id.* § 601(6). The definitions for "small business" and "small organization" clearly exclude Alabama, and "small government jurisdiction" is defined to only include "governments of cities, counties, towns, townships, villages, school districts, or special districts, with a population of less than fifty thousand." *Id.* § 601(3)–(5). Therefore, Alabama is not a "small entity" under the RFA and cannot seek judicial review under section 611(a)(1).

Alabama argues that section 611(a)(2) provides jurisdiction. That provision states that a court having jurisdiction to review "such rule" for compliance with Title 5, section 553 "shall have jurisdiction to review any claims of noncompliance" with listed provisions of the RFA. 5 U.S.C. § 611(a)(2). Alabama persuasively argues that "such rule" is best understood as referring to the "any rule subject to this chapter" language from section 611(a)(1). As noted earlier, rules subject to the RFA are those rules bound by the notice-and-comment requirements of Title 5, section 553. Alabama states that section 611(a)(2) provides an alternate method for bringing its RFA claim, one that does not require it to be a small entity.

Alabama correctly points out "one of the most basic interpretive canons" that a "'statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States*, 129 S. Ct.

-16-

1558, 1566 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)).  However, Alabama's interpretation of section 611(a)(2) would render section 611(a)(1) superfluous.  If section 611(a)(2) truly allows a court having jurisdiction under Title 5, section 553 to review all claims of noncompliance with "sections 601, 604, 605(b), 608(b), and 610," then there would be no reason to give courts the lesser but included jurisdiction to review claims stemming from the requirements of those exact same provisions only when brought by a "small entity." *Compare* 5 U.S.C. § 611(a)(1) *with id.* § 611(a)(2).

Instead, reading the two sections as limiting each other gives meaning to both sections.  Both sections provide for review of claims brought under "sections 601, 604, 605(b), 608(b), and 610 in accordance with chapter 7." *Id.* § 611(a)(1) and (2).  Section 611(a)(1), however, limits the type of plaintiff that can bring those claims, and section 611(a)(2) limits the type of court that can hear those claims.  In this case, Alabama has brought its RFA claims to a court that has jurisdiction to hear it.  However, under section 611(a)(1), Alabama is not the type of plaintiff that may bring that claim because Alabama is not a "small entity."[6]  Section 611 provides a deadline for a "small entity" to seek judicial review under the RFA, providing further evidence that a "small entity" is the only type of plaintiff that may bring a claim under the RFA. *Id.* § 611(a)(3)(A).  *See also Navajo Ref. Co. v. United States*, 58 Fed. Cl. 200, 206 n.7 (2003) (finding that plaintiff lacked standing to

_____

[6] Defendant also argues that jurisdiction for Alabama's claim that CMS violated Title 5, section 603 would not exist even if Alabama was a "small entity."  Because Alabama is not a "small entity," the Court need not decide this question.

assert an RFA claim because it was not a "small entity," in this case not a "small business").

Because Alabama is not a "small entity" that may bring a claim under the RFA, Count III is due to be dismissed.

## F. Qui Tam Relator Awards

Defendants argue that Alabama's claims should be dismissed "to the extent they relate to the SHO letter's discussion of qui tam relator awards" on the grounds that Alabama lacks standing to assert those claims because the state lacks an FCA.  Alabama asserts that Defendants' argument "is completely beside the point" because none of Alabama's claims are based on the SHO Letter's requirements relative to qui tam relators.

Plaintiff admits in its amended complaint that the state has no FCA but adds that "such statutes are relevant to the requirements set forth in" the SHO Letter.  Plaintiff then discusses generally how other states apply their FCA, asserts how the requirements in the SHO Letter would affect that application, and argues that the federal government does not require the same effects when it applies the federal FCA.  With these statements, Alabama seems to argue merely that Defendants are being inconsistent in placing requirements on states applying their FCA that the federal government is not held to in applying its FCA.  However, this Court need not decide whether Alabama's amended complaint generally asserts any claims relative to the SHO Letter's discussion of qui tam relator awards because the only count not due to be dismissed on other grounds—Count II—obviously does not relate to the SHO Letter's discussion of qui tam relator awards.  Count II asserts only that Defendants

violated the procedural notice-and-comment requirement before issuing a substantive rule.

Therefore, Defendant's motion to dismiss on these grounds is due to be DENIED.

## VI. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Doc. #19) is GRANTED in part and DENIED in part.  It is granted with respect to Count I, III, IV, V, and VI, which are all DISMISSED without prejudice[7]; it is denied in all other respects.

DONE this the 30th day of March, 2010.


_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."  *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

-19-