IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE STATE OF ALABAMA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CASE NO. 2:08-cv-881-MEF-TFM |
| | ) |
| CENTERS FOR MEDICARE &, | ) (WO - DO NOT PUBLISH) |
| MEDICAID SERVICES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

The State of Alabama ("Plaintiff" or "Alabama") brought this case against the Centers for Medicare & Medicaid Services ("CMS"), the Department of Health and Human Services ("HHS"), and representatives of CMS and HHS in their official capacity, including Herb B. Kuhn, Kerry N. Weems, and Michael O. Leavitt (collectively, "Defendants") (Doc. #18). Alabama seeks declaratory and injunctive relief for the federal issuance—in the form of a "Dear State Health Official" letter ("SHO Letter")—of what it claims to be an illegal administrative regulation. On March 30, 2010, this Court granted Defendants' motion to dismiss (Doc. #31) on all but Count II of Plaintiff's amended complaint (*see* Doc. #18). Defendants now ask the Court for leave to file a motion for reconsideration, asserting "a need to correct clear error" (Doc. #33). For the reasons set forth in this memorandum opinion and order, that motion is due to be DENIED.

Parties may file motions to reconsider in an attempt to get a court to revise prior

-1-

rulings. *See* Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). However, a motion to reconsider is only available with substantial new evidence, an intervening change in controlling law, or the need to correct clear error and manifest injustice. *See, e.g.*, *White v. Murtha*, 377 F.2d 428, 432 (5th Cir. 1967) (motions to reconsider unavailable "unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice");[1] *Summit Med. Ctr. Of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003); 18B Charles Alan Wright et al., Federal Practice and Procedure § 4478 (2d ed. 2002) ("Both parts of the formula are likely to be required, demanding both a showing of clear error and a finding that failure to correct the error would cause manifest injustice."); *see also Arizona v. California*, 460 U.S. 605, 618 n.8 (1983) (citing *White v. Murtha*, 377 F.2d at 431–32) ("[I]t is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice.").

Defendants argue that the Court erred in assuming two legal, rather than factual, claims from Plaintiff's amended complaint were true when deciding to deny Defendants' motion to dismiss Count II. Assuming without deciding that Defendants assertions are

---

[1] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

correct, their motion is due to be denied as the Court's ruling would remain unaltered on reconsideration.

First, Alabama alleged in every count of its amended complaint that the SHO Letter constitutes final agency action. The Court took these assertions as true in denying Defendants' motion to dismiss Count II. Defendants had argued in their motion to dismiss that this Court lacks jurisdiction over Count II because the SHO Letter is not final agency action. Defendants now argue that Alabama's assertions that the SHO Letter is final agency action were legal conclusions entitled to no deference. Even if Defendants are correct, the result is not altered as information currently before the Court indicates that the SHO Letter is final agency action.

The United States may not be sued without its consent, and that consent is a prerequisite for jurisdiction. *Asociacion de Empleados del Area Canalera v. Panama Canal*, 453 F.3d 1309, 1315 (11th Cir. 2006) (quoting *United States v. Mitchell*, 453 U.S. 206, 212 (1983)). This immunity extends to agencies of the United States. *Id.* Ambiguities in a purported waiver of sovereign immunity are construed in favor of immunity. *Id.* Defendants argued in their motion to dismiss that the relevant waiver under the Administrative Procedure Act applies only to final agency action. This Court assumed without deciding that Defendants' argument was correct in denying the Defendants' motion to dismiss Count II and will do the same here. Under this assumption, the Court would only have jurisdiction over Count II if the SHO Letter is final agency action.

Furthermore, this Court may review only final agency actions. 5 U.S.C. § 704; *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1280 (11th Cir. 2007) (citing *Ga. Power Co. v. Teleport Commc'ns Atlanta, Inc.*, 346 F.3d 1047, 1150 (11th Cir. 2003)). The requirement of a final agency action is jurisdictional, and the Court cannot reach the merits of the dispute if an agency action is not final. *See Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003).

To be "final," an agency's action must: (1) mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature; and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow. *U.S. Steel*, 495 F.3d at 1280 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)) (inner quotations omitted). *See also Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("To determine when an agency action is final, . . . [t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.").

In *Whitman v. American Trucking Associations, Inc.*, the defendants sued the Environmental Protection Agency ("EPA") to challenge its new national ambient air quality standards ("NAAQS"). 531 U.S. 457, 462–63 (2001). Among other things, the United States Supreme Court considered the EPA's authority to implement revised and more restrictive NAAQS in areas designated as "nonattainment." *Id.* at 476. The EPA argued that the federal courts lacked jurisdiction to review its implementation policy because it was not

final agency action. *Id.* at 477. The EPA had published a "Final decision on the primary standard," in which it stated that the included procedure would "apply to the implementation of the new . . . standards." *Id.* at 477–78. In finding that this constituted final agency action, the Supreme Court was satisfied that the EPA had issued its "last word" on the matter because it had issued a preliminary proposal, received public comments, and finally adopted the "interpretation" of the Clean Air Act at issue. *Id.* at 478–79. The Court noted that even though the EPA had not "dressed its decision with the conventional procedural accouterments of finality, its own behavior . . . belies the claim that its interpretation is not final." *Id.* at 479.

In contrast to *Whitman*, the Eleventh Circuit found that there was no final agency action in *National Parks Conservation Association v. Norton*. 324 F.3d 1229, 1240 (11th Cir. 2003). In *Norton*, the plaintiffs sued the National Park Service ("NPS") for its failure to evict leaseholders on properties in a national park. *Id.* at 1234. "Stiltsville" was a collection of structures built on stilts in Biscayne Bay in Florida. *Id.* at 1232. Congress converted an area that included Stiltsville into Biscayne National Park in 1980 and charged NPS with preserving and administering the park in accordance with relevant statutes. *Id.* at 1232–33. Accordingly, in 1983 NPS issued a plan for the park that stated all possessory interests in Stiltsville would expire on July 1, 1999, at which time the buildings would be removed. *Id.* at 1233. Following a lawsuit by Stiltsville occupants, the parties reached a settlement agreement in which NPS agreed not to evict the occupants until April 1, 2002.

*Id.* Plaintiffs responded with their lawsuit against NPS. In addressing the claims that required final agency action, the Eleventh Circuit found that it lacked jurisdiction because no final agency action existed. *Id.* at 1240. The NPS had crafted four management alternatives for Stiltsville, was in the process of evaluating each one, and assured the Court that its process would be completed within a few months. *Id.* at 1238. The Court distinguished this case from *Whitman* by noting that the "critical step" of adopting one of the management plans was absent from the agency's actions. *Id.* at 1239. The Court noted that, unlike in *Whitman*, "[n]othing remotely resembling the NPS's final word on this matter has been rendered." *Id.*

The differences between *Whitman* and *Norton* demonstrate why, given the current information before the court, the SHO Letter constitutes final agency action. Defendants insist that the SHO letter is not final agency action. However, though "an agency's description is evidence of its character," that description "is not always decisive." *Penzoil Co. v. Fed. Energy Regulatory Comm'n*, 645 F.2d 394, 399 (5th Cir. May 20, 1981). As noted by the Supreme Court in *Whitman*, an agency's behavior may demonstrate that an action is final, even if does not carry the typical "procedural accouterments" of finality and the agency claims it is not final. *Whitman*, 531 U.S. at 479. The SHO Letter notes that it explains CMS policy when a state recovers Medicaid overpayments, damages, fines, penalties, and any other component of a legal judgment pursuant to legal action as well as the timetable for turning funds over to the federal government. It does not state that this

policy is subject to further consideration or public comment. Therefore, the SHO Letter represents "the consummation of the agency's decision-making . . . from which legal consequences will flow." *U.S. Steel*, 495 F.3d at 1280.

Defendants further argue that this letter merely shows how they plan to "interpret" the relevant law. However, even if true, an interpretation of law can constitute final agency action if it satisfies the standard for final agency action. *See Whitman*, 531 U.S. at 477–79 (noting that the EPA's interpretation of how to properly implement NAAQS constituted final agency action). And Defendants freely state that the SHO Letter "indicates how CMS *intends* to interpret [the relevant law] in *future* administrative proceedings" (emphasis added). Once again, this shows that the SHO Letter is "the consummation of the agency's decision-making . . . from which legal consequences will flow. *U.S. Steel*, 495 F.3d at 1280. Given the information currently before the court, the SHO Letter does constitute final agency action.

Second, Alabama alleged that the SHO Letter is a substantive rule three different times in its amended complaint. The Court took these assertions as true in denying Defendants' motion to dismiss Count II. Defendants had argued in their motion to dismiss that Count II is unripe because it is unclear whether the SHO Letter is a substantive rule or merely an interpretive rule or general statement of policy. Defendants now argue that Alabama's assertions that the SHO Letter is a substantive rule were legal conclusions entitled to no deference. Even if Defendants are correct, the result is not altered as information

currently before the Court indicates that the SHO Letter is a substantive rule.

Federal agencies must publish notice of a proposed substantive rule and allow the opportunity for submission of comments. 5 U.S.C. § 553. This notice-and-comment requirement does not apply to interpretive rules or general statements of policy. *Id.* § 553(b). If the SHO Letter is a substantive rule, Count II would be ripe, as a claim for failure to comply with the notice-and-comment requirement is ripe at the time the alleged failure occurs. *See Ouachita Watch League*, 463 F.3d 1163, 1174 (11th Cir. 2006) (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737 (1998)). In determining whether the SHO Letter is a substantive rule or an interpretive rule or policy statement, the Court looks to the agency's intent to be bound. *See Public Citizen, Inc. v. U.S. Nuclear Regulatory Comm'n*, 940 F.2d 679, 681–82 (D.C. Cir. 1991) (inner quotations omitted). Agencies treat substantive rules, but not policy statements, as binding. *Id.* at 682. If the document in question clearly evidences an intent to be bound, the inquiry ends there. *See id.*; *see also Jean v. Nelson*, 711 F.2d 1455, (11th Cir. 1983) (finding the general statement of policy exception inapplicable when the challenged policy leaves the agency, of its implementing official, with little discretion in following it).

In this instance, the consistent use of mandatory language on the face of the SHO Letter evidences CMS's intent to be bound. The SHO Letter throughout notes what a state "must" and "may not" do and is "required" and "not permit[ted]" to do when a state pursues litigation for harm to its Medicaid program. Therefore, the SHO Letter constitutes a

substantive rule under the test set out in *Public Citizen*, and Count II is fit for judicial decision-making.[2]

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Leave to File Motion for Reconsideration (Doc. #33) is DENIED.

DONE this the 4th day of June, 2010.

           /s/ Mark E. Fuller
    CHIEF UNITED STATES DISTRICT JUDGE

---

[2] Defendants argue that the Court has to examine the application of the SHO Letter against Alabama—something that has yet to occur—to determine whether it is a substantive rule, interpretive rule, or general statement of policy. However, to the extent that the cases cited by Defendants are relevant, they only support this assertion where the statement is ambiguous as to the agency's intent to be bound. *See Municipality of Anchorage v. United States*, 980 F.2d 1320, 1325 (9th Cir. 1992) (finding that where the statement "seems to send mixed messages as to the binding intent of the agencies in its adoption . . . the better course is to withhold court review"); *Public Citizen*, 940 F.2d at 682 ("Where the language and context of a statement are inconclusive, we have turned to the agency's actual applications."); *see also Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1125–28 (9th Cir. 2009) (citing to and coming to the same conclusion as *Municipality of Anchorage* in the case of an ambiguous agency statement). These cases all differ from the current case, where the SHO Letter on its face unambiguously evidences Defendants' intent to be bound.