IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE STATE OF ALABAMA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 08-CV-881-MEF |
| | ) | |
| CENTERS FOR MEDICARE & | ) | |
| MEDICAID SERVICES, *et al.*, | ) | (PUBLISH) |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Plaintiff the State of Alabama ("Alabama") filed this lawsuit against the

Centers for Medicare & Medicaid Services ("CMS"), the Department of Health and

Human Services ("HHS"), and individuals working for CMS and HHS including Herb B.

Kuhn ("Kuhn"), Kerry N. Weems ("Weems"), and Michael O. Leavitt ("Leavitt"), all in

their official capacities (collectively, "Defendants").  (Doc. # 18).  Alabama asks this

Court to declare the "Dear State Health Official" letter ("SHO letter" or "letter") dated

October 28, 2008 invalid on the basis that CMS did not engage in notice and comment

rule making before it issued the SHO letter.[1]  *Id.*  Alabama has filed a motion for

summary judgment and the Defendants have filed a motion for judgment on the pleadings

pursuant to Rule 12(c), or in the alternative, for summary judgment.  (Doc. # 42, 44).

---

[1]  Initially, Alabama brought six claims against the Defendants.  However, this
Court granted the Defendants' Motion to Dismiss as to Counts I, III, IV, V, and VI.
(Doc. # 31).  Therefore, all that remains is Count II.

Additionally, the Michigan Department of Community Health has intervened and filed an amicus curiae brief with the Court.  (Doc. # 49).  For the foregoing reasons, Defendants' motion is DENIED and Alabama's motion is GRANTED.

## I.  JURISDICTION AND VENUE

Alabama argues that subject matter jurisdiction in this case is properly exercised pursuant to 28 U.S.C. § 1331.  As explained below, Defendants contend that jurisdiction is not proper in this case because the federal government has not waived its sovereign immunity as to the SHO letter.  As further explained, the Court finds that jurisdiction is proper pursuant to § 1331.  The parties do not dispute either that the Court has personal jurisdiction over them or that venue is proper pursuant to 28 U.S.C. § 1391(c).

## II.  LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(c)

Fed. R. Civ. P. 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed, but a reasonable time before trial.  Because Defendants' 12(c) motion requests dismissal based on a lack of subject matter jurisdiction, the Court will apply the appropriate 12(b)(1) standard when ruling on the motion for judgment on the pleadings. *See Reed Island-MLC, Inc. v. United States*, 67 Fed. Cl. 27, 33 (Fed. Cl. 2005); 5C Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1367 (3d Ed. 2004) ("[I]f any of these procedural defects are asserted upon a Rule 12(c) motion, presumably the district court will apply the same standards for granting the appropriate

relief or denying the motion as it would have employed had the motion been brought prior to the defendant's answer under Rules 12(b)(1), (6), or (7)").

A 12(b)(1) motion can contain two different types of attacks—a facial attack or a factual one. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). If a facial attack is made, the Court need only look to the pleadings to determine whether it has subject matter jurisdiction over the case. *Id.* A factual attack requires the Court to look beyond the pleadings and review testimony and affidavits. *Id.* In this case, the Defendants "do not believe that it is necessary to review any materials outside the pleadings to decide the remaining issues in this case." (Doc. # 44 at 10). Therefore, the Court will treat this as a facial attack on Alabama's Amended Complaint.

When ruling on a facial attack, the Court must afford the plaintiff the "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised. Accordingly, the court must consider the allegations in the plaintiff's complaint as true." *McElmurray*, 501 F.3d at 1251.

**B. Fed. R. Civ. P. 56(a)**

Summary judgment pursuant to Federal Rule of Civil Procedure 56(a) is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party may demonstrate the existence of or absence of a genuine dispute as to any material fact by pointing to

materials in the record "including depositions, documents, electronically stored

information, affidavits, or declarations, stipulations. . . admissions, interrogatory answers,

or other materials." Fed. R. Civ. P. 56(c). The movant "always bears the initial

responsibility of informing the district court of the basis for its motion," and identifying

those evidentiary submissions "which it believes demonstrate the absence of a genuine

issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant

can meet this burden by presenting evidence showing there is no dispute of material fact,

or by showing the non-moving party has failed to present evidence in support of some

element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56 "requires the nonmoving party

to go beyond the pleadings" and by its own evidentiary submissions or those on file,

demonstrate that there is a genuine factual dispute for trial. *Id.* at 324. The Court must

draw all justifiable inferences from the evidence in the non-moving party's favor.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party

has responded to the motion for summary judgment, the court must grant summary

judgment if there is no genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

### III.  FACTUAL AND PROCEDURAL HISTORY

CMS is a federal agency within HHS charged with administering the national

Medicaid program. Medicaid is a program through which the state provides medical

assistance to low-income individuals.  It is funded both with federal and state dollars, according to the terms of the Medicaid Act, codified at 42 U.S.C. §§ 1396-1396v.  Four times per year, each state must submit to HHS a report estimating the total amount the state will expend on Medicaid for the upcoming quarter.  Based on the report, HHS then pays each state the federal share of the amount that will be needed to cover services in the upcoming quarter.  This federal share will be "reduced or increased to the extent of any overpayment or underpayment. . . for any prior quarter and with respect to which adjustment has not already been made."  42 U.S.C. § 1396b(d)(2)(A).

Overpayments are made in some instances based on the fraud of third parties.  For example, Alabama sued several pharmaceutical manufacturers alleging that the manufacturers had submitted inflated pricing data, thereby causing Alabama to overpay for prescription drugs.  To reflect the overpayment, HHS would reduce the federal share for the upcoming quarter by the amount of such overpayment for prescription drugs which occurred in a previous quarter.  In other words, the federal government accounts for overpayments of the federal share of Medicaid in a given quarter by reducing the federal share distributed to the state in a later quarter.

States often bring suit against fraud-and-abuse defendants, so called because they are alleged to have committed fraud against the Medicaid program, therefore causing the state to make overpayments.  Once the state receives a settlement or judgment against a fraud-and-abuse defendant, a portion of that recovery must be reported to HHS so that

HHS can reduce the state's federal share for the upcoming quarter, as described above.  In order to provide the states with more information regarding how much must be reported and when, CMS issued a SHO letter on October 28, 2008.

The letter was signed by Kuhn in his official capacity as Deputy Administrator of CMS and Acting Director of CMS's Center for Medicaid and State Operations.  (Doc. # 18 Ex. 1).  The SHO letter states that it merely "explains" CMS's policy "regarding the refunding of the Federal share of Medicaid overpayments" when a state recovers from fraud-and-abuse defendants including the amount that must be returned and the time frame for returning it.  *Id.*  The SHO letter provides that if a state takes action to recover overpayments, the state must seek both the state and federal share of damages.  *Id.*  If a state recovers damages, it must return to the federal government not only a portion of any compensatory damages but also a share of any double or treble damages.  *Id.*   The state must calculate the federal share of damages before deducting any legal fees or administrative costs from the recovery.  *Id.*  The federal share of recovery must be reported to the federal government "[w]hen a settlement occurs or judgment is rendered." *Id.*  Therefore, once a state receives a trial court judgment or enters into a settlement agreement in its favor, the state must report the federal share of the judgment or settlement to CMS regardless of whether the state has successfully collected on the judgment or settlement.

Alabama claims that the provisions of the SHO letter harm the state in several

ways.  Alabama has no way of knowing what portion of a settlement amount will need to be returned to the federal government, and therefore is limited in its ability to negotiate settlements in cases involving Medicaid fraud and abuse.  Additionally, the state fears it will have to return millions of dollars based on settlement offers or judgments, even if the state has not received any funds from the fraud-and-abuse defendants.

Alabama filed its Amended Complaint against the Defendants on December 31, 2008.  (Doc. # 18).  The Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(1), which this Court granted in part and denied in part.  (Doc. # 19, 31).  All that remains of the six original claims is Count II, which seeks to invalidate the SHO letter on the basis that CMS did not engage in notice and comment rulemaking before issuing the letter. (Doc. # 31).  Alabama filed a motion for summary judgment.  (Doc. # 42).  The Defendants filed a motion for judgment on the pleadings, or in the alternative a motion for summary judgment.  (Doc. # 44).  The Defendants argue that the Court lacks jurisdiction over Count II because the SHO letter is not final agency action, and therefore the United States has not waived its sovereign immunity.  Additionally, the Defendants argue that the SHO letter is not subject to the notice and comment rulemaking requirements of the Administrative Procedure Act ("APA") because the SHO letter is an interpretative rule.

Subsequent to the filing of this lawsuit, Congress enacted the Patient Protection & Affordable Care Act ("PPACA"), which significantly changes the rules regarding how

much and when a state must report overpayments.  Patient Protection and Affordable
Care Act, Pub. L. No. 111-148 § 6506 (March 23, 2010).  CMS claims that it will have to
alter the content of the SHO letter to take into account the new provisions of the PPACA.

Collateral to this lawsuit are proceedings between the state of Michigan, an amicus
in this case, and CMS.  In 2006, Michigan reached a $49 million settlement with a
pharmacy operator, one third of which represented "Medicaid dollars" and two thirds of
which represented a civil penalty imposed under state law.  (Doc. # 49 at 4).  CMS
required that Michigan report to the federal government the federal share of the entire
recovery.  *Id.*  Michigan filed a request for reconsideration, but CMS denied the request.
(*Id.*; Doc. # 59 at 3).  In rendering a decision on Michigan's request, CMS stated that its
initial decision was "consistent with" the SHO letter at issue in this case.

## IV.  DISCUSSION

### A.  *Final Agency Action*

The Defendants argue that this Court lacks subject matter jurisdiction to resolve
this dispute because the SHO letter is not final agency action.  According to the
Defendants, the federal government has waived its sovereign immunity through the APA
only with regard to final agency actions.  Therefore, if the SHO letter is not a final agency
action, the federal government has sovereign immunity and Alabama's claim must be

dismissed.[2]

Section 706 of the APA creates a right of judicial review of agency action, and gives a reviewing court the power to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law."  5 U.S.C. § 706(2); *see also* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."). However, federal courts lack jurisdiction over agency action that is not final within the meaning of 5 U.S.C. § 704.  *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003) (finding that the district court granted summary judgment in error because since the challenged agency action was not final, the court lacked subject matter jurisdiction); *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1280 (11th Cir. 2007) (discussing the applicable statute of limitations and finding that the statute begins to run only after the challenged agency action has become final, as "only final agency actions can be subject to judicial review") (citing *Ga. Power Co. v. Teleport Commc'ns Atlanta, Inc.*, 364 F.3d 1047, 1150 (11th Cir. 2003)); *St. Andrews Park, Inc. v. U.S. Dept. of Army Corps of Eng'rs*, 314 F. Supp. 2d 1238, 1244 (S. D. Fla. 2004) (federal jurisdiction is lacking when the administrative action in question is not "final").  This Court has already held when

---

[2] It should be noted that this is the third time that Defendants' have argued that the Court lacks subject matter jurisdiction—first it their motion to dismiss (Doc. # 19) and second in their motion for reconsideration (Doc. # 33).  This argument was rejected in its previous two appearances.

ruling on the Defendants' motion to dismiss that "the requirement of a final agency action is jurisdictional, and the Court cannot reach the merits of the dispute if an agency action is not final."  (Doc. # 31 at 7).[3]

The United States Supreme Court has set out the following two part test for determining whether or not an agency's action is final: (1) the action must "mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature"; and (2) the action must "be one by which rights or obligations have been determined or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations and quotations omitted).

This Court has already found that "given the current information before the court, the SHO Letter constitutes final agency action."  (Doc. # 37 at 6).  The Defendants have not provided the Court with any information that would necessitate a different finding.[4]

---

[3]  Alabama argues in its response to the Defendants' motion for summary judgment that the Court had previously "assumed without deciding that the APA's waiver of sovereign immunity only applies to final agency action."  (Doc. # 54 at 5).  Alabama spends considerable time discussing whether or not the APA's waiver of sovereign immunity is limited only to final agency action.  Regardless of the extent to which the APA has waived sovereign immunity, the Eleventh Circuit and this Court have previously held that the finality of an agency action is a prerequisite for exercising federal jurisdiction.  Therefore, the Court need not discuss Alabama's arguments regarding the waiver of sovereign immunity.

[4]  The Defendants argue that while the Court has previously decided that the SHO letter is final agency action, it has "not yet addressed whether Alabama has satisfied its burden under the summary judgment standard" as to this issue.  (Doc. # 57 at 4).  However, the Defendants have moved for dismissal of Alabama's remaining claim pursuant to Rule 12(c), and only in the alternative pursuant to Rule 56.  Therefore, the Defendants' arguments regarding the finality of the SHO letter will be adjudicated under

They have, however, presented multiple arguments which they contend demonstrate that the SHO letter is not final agency action.  Each argument will be addressed in turn.

First, the Defendants argue that the SHO letter is tentative or of an interlocutory nature because its contents will have to be amended in accordance with the PPACA, which was enacted after the issuance of the SHO letter.  (Doc. # 44 at 12).  However, as Alabama points out, this argument has no merit.  The D.C. Circuit has repeatedly rejected arguments like the Defendants'.  In *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000), the Circuit explained that

> EPA may think that because the Guidance, in all its particulars, is subject to change, it is not binding and therefore not final action. There are suggestions in its brief to this effect.  But all laws are subject to change. Even that most enduring of documents, the Constitution of the United States, may be amended from time to time. The fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment.

To paraphrase the D.C. Circuit, if the possibility of future, intervening statutory change "could make agency action non-final as a matter of law" then it would be hard to imagine any agency rule which could ever be final as a matter of law. *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 380 (D.C. Cir. 2002).  This Court agrees.  The intervening changes in the law do not render the SHO letter immune from judicial review.

Second, the Defendants argue that the SHO letter cannot be final agency action because CMS has not yet issued any disallowance with respect to Alabama.  (Doc. # 44 at

---

a 12(b)(1) standard, and the summary judgment standard is inapplicable here.

12–13).  Additionally, Defendants argue, if and when CMS did issue a disallowance against Alabama, the state could request reconsideration of the disallowance.  However agency action is not required to be specifically applied to an entity within the agency's purview before the action is considered final.  So long as the action is one from which "legal consequences *will* flow," the action can be considered final.  *Bennett*, 520 U.S. at 178.  Bennett does not require that the legal consequences of an agency action be applied to individual states before the SHO letter can be considered final agency action.  The SHO letter establishes the rights and obligations of states who seek recovery from fraud-and-abuse defendants.  It requires states to report to HHS the federal share of all recovery including compensatory and punitive damages; it requires states to seek recovery of the federal share of damages if any recovery is sought at all; and it requires that any federal share of recovery must be reported before any expenses or fees are deducted by the state. (Doc. # 18 Ex. 1).  Additionally, CMS has cited the SHO letter when determining the legal rights and obligations of the state of Michigan.  (Doc. # 59).  This is sufficient to find that under *Bennett* the SHO letter constitutes final agency action.

The Defendants' third argument relies on the fact that the Alabama Supreme Court recently vacated jury verdicts that Alabama had obtained from pharmaceutical fraud-and-abuse defendants.  (Doc. # 44 at 13).  *See AstraZeneca LP v. Alabama*, Nos. 1071439, 1071440, 1071704, & 1071759, 2009 WL 3335904 (Ala. Oct. 16, 2009).  Therefore, they contend, the issue of how much the federal government is entitled to from Alabama's

recovery against the pharmaceutical defendants is now moot.  The Defendants argue that this is further evidence that exercise of subject matter jurisdiction in this case would be "exactly the type of premature judicial review the final agency action requirements [were] meant to prevent."  (Doc. # 44 at 14).  However, this Court has not been called upon to calculate what share of any state recovery should be returned to the federal government. Instead, Alabama has requested a declaratory judgment that the procedures that CMS used when issuing the SHO letter were inadequate and in violation of the APA.  In no way does this Court's ruling depend upon whether or not Alabama has successfully recovered against fraud-and-abuse defendants at the state level.  Therefore, the Alabama Supreme Court's decision in *AstraZeneca LP* does not change this Court's finding that the SHO letter is final agency action.

The Defendants' fourth and last major argument is that any legal consequences which Alabama claims flow from the SHO letter are actually created by the Medicaid Act and any implementing regulations.  (Doc. # 44 at 14).  If the only source of legal consequences were statutes such as the Medicaid Act, no agency action would ever be able to satisfy the standard set out in *Bennett*.  The Defendants present no case law which would support their position that only the Medicaid Act and implementing regulations can be the source of legal rights and obligations.  The Defendants also seem to argue that because the SHO letter is merely an interpretative rule, it cannot possibly be the final source of legal consequences.  However, the definition of "final agency action" is not

13

limited to those rules which first pass through the notice and comment process. *Appalachian Power*, 208 F.3d at 1020.  Additionally, as described below, this Court finds that the SHO letter is not an interpretative rule.

None of the Defendants' arguments provide the Court with new information which would cause it to change the opinion formulated when ruling upon the Defendants' motion for reconsideration.  Therefore, the conclusion that the SHO letter is a final agency action upon which federal jurisdiction can be predicated shall stand.  As this Court noted in its opinion dated June 4, 2010, the SHO letter does not state that it is subject to further consideration or public comment.  (Doc. # 37 at 7).  The letter does not give CMS discretion when implementing its terms.  Nor does it indicate in any way that it is anything but the consummation of the agency's decision-making process on this issue.  Certainly the obligations that the SHO letter imposes can be traced back to the Medicaid Act itself, without which the SHO letter could not have been issued.  However, the terms of the SHO letter impose legal obligations on the states that neither the plain language of the Medicaid Act nor the regulations promulgated by CMS impose.  For these reasons, the Court finds that the SHO letter is final agency action which is subject to judicial review by this Court.

### B.  Alabama's Notice and Comment Claim

Because this Court finds that it properly exercises jurisdiction in this case, it will now address the merits of Alabama's claim, which alleges that CMS violated the

procedures set forth in the APA by failing to engage in notice and comment rulemaking before issuing the SHO letter.  Section 553 of the APA requires agencies to give public notice and allow interested persons an opportunity to submit comments before a rule is issued.  5 U.S.C. § 553.  There are several exceptions to these notice and comment procedures, but only two are relevant here.  Neither general statements of policy nor interpretative rules are subject to the procedural requirements of § 553.  *Id.* at § 553 (b)(A).

The Court "shall" "hold unlawful and set aside agency action, findings, and conclusions found to be . . . without observance of procedure required by law."  5 U.S.C. § 706.  In other words, if CMS was required to engage in notice and comment rulemaking before issuing the SHO letter and did not do so, the Court must set aside the SHO letter.

### 1. *General Policy Statement*

The defendants have abandoned their argument that the SHO letter is a general policy statement, having lost twice on the issue already. (Doc. # 57 at 2).  Therefore, the Court need not reanalyze this argument.  For purposes of ruling on this motion, the SHO letter is not a general statement of policy.

### 2. *Interpretative Rule*

An interpretative rule, as opposed to a legislative rule for which notice and comment rulemaking is required, "typically reflects an agency's construction of a statute that has been entrusted to the agency to administer" and does not modify or add to a legal

norm "based on the agency's own authority." *Warshauer v. Solis*, 577 F.3d 1330, 1337

(11th Cir. 2009) (quoting *Syncor Itn'l Corp. v.  Shalala*, 127 F.3d 90, 94–95 (D.C. Cir.

1997)).  When determining whether or not a rule is interpretative, the following principles

should be considered.  First, the agency's characterization of its own rule is relevant to

the determination, although not dispositive.  *Id.* (quoting *General Motors Cop. v.

Ruckelshaus*, 742 F.2d 1561, 1565 (D.C. Cir. 1984) (*en banc*).  Second, an interpretative

rule states what the agency thinks a statute means.  *Id.*  A legislative rule creates new law,

rights, or duties.  *Id.*

   "The distinction between an interpretative rule and a substantive rule . . . likely

turns on how tightly the agency's interpretation is drawn linguistically from the actual

language of the statute."  *Id.*  Generally, "an agency cannot go beyond the text of a statute

and exercise its delegated powers without first providing adequate notice and comment."

*Fertilizer Inst. v. EPA*, 935 F.2d 1303, 1308 (D.C. Cir. 1991).  Legislative rules are those

which create law, "usually implementary to an existing law" whereas interpretative rules

"are statements as to what the administrative officer thinks the statute or regulation

means."  *Brown Express, Inc. v. U.S.*, 607 F.2d 695, 700 (5th Cir. 1979).[5]

   Applying these factors, the Court finds that the SHO letter at issue in this case is

not an interpretative rule, and therefore does not fall within an exception to the notice and

---

   [5] In *Bonner v. City of Pritchard, Ala.*, 661 F.2d 33, 34 (11th Cir. 1981) (en banc),
the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down
prior to the close of business on September 30, 1981.

comment requirements of the APA.[6]  While CMS has certainly characterized the SHO letter as an interpretative rule during the course of this litigation, the SHO letter itself does not explicitly purport to be an interpretative rule.  The letter's introduction states that it "explains" CMS policy.  CMS also states that certain legislation supports it's "interpretation" of 42 U.S.C. § 1396b.[7]  However, these two words pulled from a three page letter are hardly CMS's explicit characterizations of an interpretative rule.  Regardless, CMS's characterization of its own rule, especially a characterization made after suit has been brought, is not determinative.  *See Warshauer*, 577 F.3d at 1337.

As the Eleventh Circuit pointed out in *Warshauer*, the real difference between interpretative and legislative rules is how tightly the rule is linguistically tied to the statute it purports to interpret.  Therefore, the Court will discuss each section of the letter in turn to uncover what, if any, linguistic ties to the statute exist in the SHO letter.

In the first substantive section of the SHO letter entitled "Refunding of Damages, Fines, and Penalties Assessed on Acts of Fraud, CMS quotes from §§ 1396b(d)(2)(A) and

---

[6] CMS also argues in a footnote of their brief that the SHO letter is partially a rule of agency procedure or practice, and therefore should also be exempt from notice and comment requirements on this basis.  (*See* Doc. # 44 n.7) Defendants only argue that the last paragraph of the letter falls within this exception.  Even if the Court finds that the last paragraph of the letter is exempt from notice and comment, the remainder of the letter is a substantive rule issued in violation of the APA.  Therefore, Defendants' contention does not save the SHO letter from being declared unlawful.

[7] The SHO letter several times refers to "§ 1903."  Section 1903 is a provision of the Social Security Act which is codified at 42 U.S.C. § 1396b.  The court will herein refer to statute by its codified section and subsections.

(d)(3)(A).  The pertinent language reads:

> the pro rata share to which the United States is equitably entitled, as
> determined by the Secretary, of the net  amount recovered during any
> quarter by the State or any political subdivision thereof with respect to
> medical assistance furnished under the State plan shall be considered an
> overpayment to be adjusted under this subsection."

42 U.S.C. § 1903(d)(3)(A).  After quoting the statutory language, the letter then moves on

to state that the Act requires the state refund to the federal government not only the

federal share of the "amount originally paid attributable to fraud or abuse, but also [a] . . .

share of any other recovery." It could be argued–and Defendants do so–that this language

interprets the phrase "net amount recovered" as used in § 1903(d)(3)(A).[8]  But the

remainder of the letter is not at all "drawn linguistically from the actual language of the

statute."  *See Warshauer*, 577 F.3d at 1337.

The letter proceeds to declare that any state action taken to recover damages

resulting from fraud on the state Medicaid program must seek to recover not only the state

share of Medicaid damages, but also the federal share.  In no way is this pronouncement

tied to the language of the quoted statute.  Further, according to the SHO letter, states

---

[8] Alabama contends that the SHO letter is not interpretative by virtue of the fact
that it does not seek to construe any ambiguous term in the statute.  (Doc. # 54 at 18).
While this is true–the letter does not explicitly point out any specific language from the
statute that it seeks to interpret–this fact alone does not disqualify the letter from being an
interpretative rule.  However, as pointed out in *Warshauer*, the closer the rule and the
statute are linguistically, the more likely it is that the rule will be an interpretative one.
The fact that the SHO letter does not point out and define any ambiguous language in the
statute gives weight to the conclusion that it is in fact a substantive rule.

must return the federal share of any damages sought against third party fraud defendants such as pharmaceutical companies.  While the SHO letter goes on to state that a state "may not avoid adhering to the requirements set forth in section [§ 1396b(d)] of the Act by virtue of pursuing legal action against" third parties, nowhere does the SHO letter state that the language of the statute itself demands the interpretation that recovery in suits against third parties must be considered overpayments.  The Defendants argue that by tying up this "loophole," CMS is interpreting the statute.  Instead, CMS was implementing the statute, and in so doing chose to close up a perceived loophole.  Again, nothing in the text of the statute itself would require CMS to implement the statute in such a way as to close up the said loophole.  CMS could just have easily chosen to leave that statutory loophole open, and to find that recovery against third party fraud-and-abuse defendants would not be considered an overpayment.  When an agency exercises its "delegated powers" and goes "beyond the text of a statute," it has created a legislative rule and must first engage in notice and comment rulemaking.  *See Fertilizer Inst.*, 935 F.2d at 1303.

Next the letter states that the federal government is entitled to receive its share of any civil fines or penalties the states recover against fraud defendants.  While the letter states that this rule is in accordance with longstanding HHS Departmental Appeals Board policy, nowhere does the letter explain how this policy was derived from the language of

the Medicaid statute.[9]

In the second substantive section of the SHO letter, entitled "Relator Costs and Attorney's Fees" the letter does not cite to or quote any statutory language at all. The letter declares that the federal share of recovery must be calculated before any relator's share, legal expenses, or administrative costs are deducted. Again, like the section above, this portion of the letter does not draw at all from the language of any statute.

The Defendants argue that through context, one can understand that this section regarding relator costs and attorneys fees is somehow defining the phrase "net amount recovered" as used in § 1396b. Therefore, the Defendants argue that the letter requires that the "net amount recovered" be calculated before any fees are deducted. This is a weak argument—the word "net" as used in the statute would seem to imply that the federal share should be calculated after relators fees and costs are deducted. Nothing in the context of the letter would indicate that CMS was intending to define the cited phrase.

The third portion of the letter, entitled "Timing for Returning the Federal share," does not contain much substance. Instead it merely repeats the language of 42 U.S.C. §

---

[9] The Defendants argue that CMS's quotation from the Deficit Reduction Act of 2005 in this section of the letter also points to the letter's interpretative function. The Court disagrees. CMS's purpose in citing to the Deficit Reduction Act is to provide support for its chosen method of implementing § 1396b(d). The fact that an agency's rule is consistent with other legislation does not therein make the rule an interpretation of a different statutory provision.

1903(d)(2)(C) and 42 CFR 433.316.[10]

The "guidance" that the SHO letter conveys to states is much more like an implementation of the Medicaid Act than an interpretation.  As pointed out by the Court's thorough analysis of the substance of the SHO letter, there is hardly any linguistic connection between the legal duties created by the letter and the text of the statute.  The Defendants contend that even in the portions of the letter that do not quote or cite statutory language, "it is clear from context that the agency is interpreting such a provision."  (Doc. # 44 at 19).   The Court disagrees with this contention.

Additionally, the SHO letter creates new law.  Contrary to the letter's assertion that "the Act's broad mandate demands" the rules set out in the SHO letter, nothing in the text of the statute requires the rules that CMS chose.  The fact that CMS's chosen rules are "consistent with" or "authorized by" the Medicaid Act does not make those rules interpretative.  *See Hoctor v. U.S. Dep't Agric.*, 82 F.3d 165, 170 (7th Cir. 1996). Therefore, CMS was required to undergo notice and comment rulemaking before issuing the SHO letter.

### C.  Vacatur is appropriate in this case

When a Court determines that an agency has committed a prejudicial error requiring remand, the Court must further decide whether the remand should be coupled

---

[10] This portion of the letter does not alone create new law, rights, or duties. However, even if this portion of the letter is merely "interpretative," it cannot save the remainder of the letter which the Court finds contains a substantive rule.

with vacatur of the agency's rule.  *Sugar Cane Growers Co-op of Fla. v. Veneman*, 289

F.3d 89, 98 (D.C. Cir. 2002).[11]   When considering whether vacatur is appropriate, courts

should look to "the seriousness of the order's deficiencies . . . and the disruptive

consequences of an interim change."  *Id.*

The D.C. Circuit has emphasized how important notice and comment is, stating

that a lack of notice and comment is a "fundamental flaw that 'normally' requires vacatur

of the rule." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009)

(citing *Sugar Cane Growers*, 289 F.3d at 97–98).  The seriousness of CMS's failure to

engage in notice and comment rulemaking—a failure for which no explanation has been

provided—counsels in favor of vacatur in this case.

Additionally, vacating the SHO letter would cause minimal disruption in CMS's

administration of the Medicaid program.  The narrow set of circumstances to which the

SHO letter applies—suits filed by states to recover from fraud-and-abuse

defendants—represents a very small part of the entire Medicaid scheme.  In the absence

of the SHO letter, states will continue reporting predicted expenditures to HHS and HHS

will continue to pay each state the federal share of Medicaid expenses.  Additionally,

---

[11] The Court recognizes that there is some dispute about whether or not a court has
discretion to remand without vacating. *See Checkosky v. S.E.C.*, 23 F.3d 452, 490–93
(Randolph, J., separate opinion) (declaring remand without vacatur unlawful); *Milk Train,
Inc. v. Veneman*, 310 F.3d 747, 756–58 (Sentelle, J., dissenting) (same).  However, since
the Court finds that vacatur is appropriate in this case, the dispute about whether remand
without vacatur is permissible does not affect the outcome here.

unlike the situation in *Sugar Cane Growers*, this case is not one where "the egg has been scrambled." 289 F.3d at 97 (finding that vacatur was not appropriate where agricultural program had already been launched and crops had been plowed under). Money exchanges hands between the states and the federal government each quarter, and any fraud-and-abuse overpayments recovered before CMS promulgates a new SHO letter can be corrected in a subsequent quarter.

Therefore, the Court finds that vacatur of the SHO letter is appropriate in this case. Accordingly, Alabama's request for injunctive relief is denied.

## V. CONCLUSION

The Court finds that the SHO letter is a rule to which 5 U.S.C. § 553's notice and comment provisions applied, and it is hereby ORDERED that:

1.    The Plaintiff State of Alabama's motion for summary judgment (Doc. # 42) is GRANTED.

2.    The Defendants' motion for judgment as a matter of law, or in the alternative motion for summary judgment (Doc. # 44) is DENIED.

3.      The SHO letter is VACATED and REMANDED to CMS so that CMS can

promulgate a new rule after complying with the notice and comment requirements

of the Administrative Procedure Act.

A separate final judgment will be entered in this case.

Done this the 18th day of February, 2011.

                                        /s/ Mark E. Fuller
                        _____
                        CHIEF UNITED STATES DISTRICT JUDGE